IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

THOMAS AND ALMA BROWN                                                 PLAINTIFFS

v.                                                           CIVIL ACTION NO. 1:24-CV-31-SA-DAS

SHELTER MUTUAL INSURANCE COMPANY and
JOHN DOES 1-10                                                      DEFENDANTS

ORDER AND MEMORANDUM OPINION

On October 30, 2023, Thomas and Alma Brown initiated this litigation when they filed their Complaint [2] against Shelter and John Does 1-10 in the Circuit Court of Clay County, Mississippi. Shelter removed the case to this Court premising federal jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332. Now before the Court is Shelter's Motion for Summary Judgment [20]. The Court is prepared to rule.

*Relevant Background*

On October 30, 2020, the Browns' home, which was located in West Point, Mississippi, was completely destroyed by fire. At the time, Shelter insured the home pursuant to a homeowner policy. The policy provided coverage limits of $354,000.00 for the dwelling and $247,800.00 for personal property.

Shelter has made several payments to the Browns since the fire occurred. On November 2, 2020, Shelter sent the Browns an advance payment of $2,500.00 in personal property coverage. Then, in December 2020, Shelter paid the Browns the entire dwelling coverage limit of $354,000.00 and an additional $76,028.00 in personal property coverage.

After these initial payments, Shelter made multiple additional personal property payments to the Browns after they produced receipts showing that lost items had been replaced. Between April 7, 2022 and October 5, 2023, Shelter issued thirteen separate payments to the Browns in

varying amounts ranging from $36.54 to $47,533.87. In total, Shelter has paid $228,393.70 to the Browns for personal property. There appears to be no dispute as to the issuance of any of these payments.

The difference in the total personal property coverage payments that Shelter has made ($228,393.70) and the policy's personal property limit is $19,406.30. That $19,406.30 is at the heart of the parties' dispute.

In their Complaint [2], the Browns allege that Shelter failed to fully comply with its contractual obligations without an arguable basis. For its part, Shelter contends that it fully paid the amount which it was obligated to pay personal property loss including the replaced items for which the Browns provided receipts. Shelter filed a Motion for Summary Judgment [20] on that basis.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts

showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

The basis for Shelter's request for summary judgment is straightforward—it contends that it "fully paid Plaintiffs for all coverages pursuant to the terms and conditions of the Policy and is entitled to summary judgment as a matter of law." [21] at p. 5.

Before addressing the substance of Shelter's request, the Court feels compelled to address the Browns' Complaint [2]. It is far from a model of clarity. For instance, it alleges that Shelter engaged in bad faith in denying their claim but never clearly articulated when or how the claim was denied:

> 12. Shelter Insurance lacked an arguable or legitimate basis for denying the claim. Plaintiff did not lie to Shelter Insurance, nor did they provide any false information in pursuit of their claim. Moreover, they fully cooperated with Shelter Insurance[']s investigator. Moreover, by acting dilatorily and in bad faith, Shelter Insurance caused the Plaintiffs to suffer severe emotional distress and anxiety, and to unnecessarily delay this completion of this claim. As such, Shelter Insurance acted with gross and reckless disregard for the Plaintiffs' rights as an insured. Thus, Shelter Insurance acted with bad faith.

[2] at p. 3.

The Browns allege that "[a]s a direct and proximate result of Shelter Insurance's bad faith, Plaintiffs have incurred pecuniary and nonpecuniary damages well in excess of $200,000.00" and later request compensatory damages in an amount "greater than $247,000.00[.]" *Id*. at p. 3-4. They also request punitive damages.

While (again) recognizing that the allegations are far from clear, the Browns' averments appear, in the Court's view, to assert an insurance bad faith claim. Shelter treated it as such in its request for summary judgment. Several months after Shelter filed its Motion [20], the Browns responded on March 28, 2025. In their Memorandum [27], the Browns make reference to a breach of contract claim. Presumably, this contention is based on the language in their Complaint [2] that Shelter "refused to fully honor its policy." [2] at p. 3.

The Court will begin with bad faith. "The Mississippi Supreme Court has recognized that claimants can bring bad faith claims against and recover punitive damages from insurers who refuse to pay out on a valid claim." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1098 (Miss. 1996)). The Fifth Circuit has articulated a plaintiff's burden in order to prevail on a claim of this nature under Mississippi law:

> In order to recover punitive damages against an insurance company for bad-faith refusal to pay a claim, or refusal to honor an obligation under an insurance policy, the insured must first demonstrate that the claim or obligation was in fact owed. Second, the insured must demonstrate that the insurer has no arguable reason to refuse to pay the claim or to perform its contractual obligation. Finally, in order to recover punitive damages from the insurer for bad faith, the insured must demonstrate that the insurer's breach of the insurance contract "results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort."

4

*Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (quoting Jackson, Miss. Ins. Law, § 13:2; *Caldwell*, 686 So. 2d at 1095).

Here, there is no dispute that the first element is satisfied—Shelter agrees that the Browns made a legitimate insurance claim after their home was completely destroyed by fire.

As to the second element, the Browns must establish Shelter had no arguable basis for denying their claim. "The Mississippi Supreme Court has held that an arguable basis 'is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts.'" *Baker v. Allstate Indemnity Co.*, 2024 WL 2925744, at *2 (N.D. Miss. June 10, 2024) (quoting *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984)).

As noted previously, Shelter paid the Browns the entire dwelling coverage limit of $354,000.00. Shelter also made property coverage payments in the amount of $228,393.70, which is $19,406.30 less than the policy's personal property limit. Shelter takes the position that it did not deny any of the Browns' requested payments but, rather, that it made multiple separate personal property payments to the Browns after receiving receipts from the Browns to support the payments.

A brief review of the applicable policy language is necessary. As to personal property, the policy provides in pertinent part as follows:

> (B) This provision applies to covered losses to all personal property:
>
> (1) We will estimate the market value and, at our option, the restoration cost, of the damaged property. Based on that estimate we will, at our option, do one of the following:
>
> > (a) Pay the estimated market value of the damaged property;
> > (b) Pay the estimated restoration cost of the damaged property;
> > (c) Pay to replace the damaged property, in kind; or

    (d)    Pay the limit of coverage stated in this policy as applicable to the damaged property, including any special limits, or limits based on its location.

(2) No further payment will be made unless, within three years of the date of the loss:

    (a)    All the repairs and replacements necessary to restore the form and function of the damaged property have actually been completed; and
    (b)    The total restoration cost is agreed upon by you and us.

We will then pay you:

    (c)    The difference between the amount we have already paid you and the restoration cost; or
    (d)    If the amount we have already paid you plus the amounts payable under (c), immediately above, total more than the limit shown in the Declarations that applies to that particular loss, we will pay you the difference between the amount we have already paid you and that limit.

. . .

(3) Our liability will not exceed the lesser of the following amounts:

    (a)    The cost to replace the item with a new item similar to the item on which the claim is based;
    (b)    400% of the current market value of the item, but not less than its market value on the date you first acquired it; or
    (c)    The limit of coverage stated in this policy as applicable to the item, including any special limits, or limits based on its location.

[20], Ex. 1 at p. 4.

Relying on this policy language, Shelter takes the position that it did precisely what the policy required of it—that is, it made payments to the Browns in accordance with the receipts the Browns provided within three years of the date of the loss. In fact, the Browns admitted the following requests for admission:

    **REQUEST NO. 3:** Please admit that you have been paid by Shelter for receipts you submitted in Bates No. "Brown 001-383".

6

> **REQUEST NO. 4:** Please admit that Shelter has paid you $228,393.30 for personal property loss.

[20], Ex. 5 at p. 2; [15], Ex. 1; [22], Ex. 1.

Thus, the Browns admitted that Shelter paid them in accordance with the submitted receipts.

However, in their (untimely) Response Memorandum [27], the Plaintiffs make the following argument:

> [T]he record contains ample evidence that:
>
> - Plaintiffs submitted valid receipts totaling the remaining unpaid amount of $19,460.70.
>
> - Shelter failed to process or wrongfully denied reimbursement for certain items.
>
> - Shelter deposed Plaintiffs and was made aware of these unpaid amounts but refused to resolve them.
>
> - Plaintiffs made claims for property that they have no receipts for, asserting that these items were lost in the fire and should be covered under the policy.

*Id.* at p. 2.

Notably, though, despite making these allegations in their Response Memorandum [27], the Plaintiffs attach no documentation to their Response [26]. In other words, they present no summary judgment type evidence to support their contentions. For instance, they provide no proof of the valid receipts that they contend were submitted nor do they submit any documentation of Shelter's denials of any submitted receipts. Likewise, they submit nothing to support the allegations that they "made claims for property that they have no receipts for[.]" [27] at p. 2.

At the summary judgment stage, the nonmoving party cannot rely simply on their pleadings or bald allegations—they must point to *evidence* to support their position. *See* FED. R. CIV. P. 56(c)

7

(noting that a party asserting that a fact is genuinely disputed must support the assertion by "citing to *particular* parts of materials in the record[.]") (emphasis added); *see also Rino-K&K Compression, Inc. v. Hilco Industrial, LLC*, 2022 WL 2903120, at *6 n. 2 (W.D. Tex. May 4, 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Furthermore, this Court "has no duty to survey the entire record in search of evidence to support a non-movant's position." *Head v. Smith*, 2021 WL 4168390, at *2 (E.D. La. Sept. 2021) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)) (additional citations omitted).

Shelter contends that the policy requires nothing more of it than to pay the submitted receipts. Indeed, the policy provides that "no further payments will be made unless, within three years of the date of the loss . . . [a]ll the repairs and replacements necessary to restore the form and function of the damaged property have actually been completed[.]" [20], Ex. 1 at p. 4. And again, the Court has no summary judgment type evidence before it to contradict Shelter's position that it made all payments in accordance with the receipts that the Browns provided to it.[1] In short, the Court has been provided nothing to indicate that Shelter acted without an arguable basis.

Considering the submitted filings and the record as a whole, the Court finds that summary judgment is appropriate. Shelter has provided evidence to support its position that it made all

---

[1] Having reviewed Alma Brown's deposition, which was attached to Shelter's Motion [20] (not the Browns' Response [26]), the Court notes that she generally denied that Shelter had made payments for all submitted receipts but, when pressed, did not identify any receipts or items for which she had not received payments. *See* [20], Ex. 4 at p. 7. And, again, the Browns have submitted nothing to support their claim since that time. Furthermore, the Court notes that the Browns made no effort to point to specific parts of Alma Brown's deposition to support their position—an obligation that lies with them in order to preclude summary judgment. *See Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.

payments as required under the policy. And the Browns have submitted no evidence to the contrary. Their claims are due to be dismissed.[2]

*Conclusion*

For the reasons set forth herein, Shelter's Motion for Summary Judgment [20] is hereby GRANTED. All claims are dismissed *with prejudice*. Any issues not addressed herein would not change the outcome.

A Final Judgment consistent with this Order and Memorandum Opinion will be entered this day. This CASE is CLOSED.[3]

SO ORDERED, this the 1st day of April, 2025.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[2] For the reasons noted previously, the Court analyzed the Browns' allegations as a bad faith claim. However, to the extent that the Browns have plausibly stated a breach of contract claim, the Court finds that it fails for the same reasons noted herein—specifically, there is nothing in the record to indicate that Shelter did not act in accordance with its contractual obligations.

[3] The other pending Motions [22, 24, 28, 32] are DENIED as moot. In reaching its conclusion, the Court has considered the Browns' Response [26] and supporting Memorandum [27], despite the fact that they were untimely filed.